

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CRUZ, HILARINO APARICIO,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, CALIFORNIA, a Municipal Corporation; et al.,<br><br>Defendants. | Case No.: 24-cv-00287-AJB-MSB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT DEFENDANTS' MOTIONS TO STRIKE AND FOR A MORE DEFINITE STATEMENT**<br><br>**(Doc. No. 24)** |

Presently before the Court is Defendants City of San Diego (the "City"), Chief David Nisleit, Sergeant Matthew Ruggiero, Officer Jeremy Avalos, and Officer Jonah Tafoya's (collectively, "Defendants") motion to dismiss Plaintiffs Elizabeth Cruz and Hilarino Aparicio's (collectively, "Plaintiffs") First Amended Complaint ("FAC"), pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6). (Doc. No. 24.) In the alternative, Defendants move for a more definite statement under Rule 12(e). (*Id.*) Defendants also seek to strike portions of Plaintiffs' FAC which they allege are impertinent, immaterial, and scandalous under Rule 12(f). (*Id.*) For the reasons stated herein, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' FAC and **DENIES AS MOOT** Defendants' motions to strike and for a more definite statement.

1

## I. BACKGROUND

This action arises out of the death of Imanol Aparicio ("Decedent") who was shot by on-duty police officers on or about November 13, 2023. (FAC, Doc. No. 21, ¶ 12.) Plaintiffs allege that at the time police officers encountered Decedent, they were aware of his identity as he was a suspect in a shooting which had happened earlier in the evening. (*Id.* ¶ 30.) Decedent then ran from police to evade arrest, and police officers fired numerous gunshots at Decedent, including two shots after Decedent was on the ground. (*Id.* ¶¶ 13, 31.) Plaintiffs allege the officers did not announce themselves as police prior to the fatal shooting, and did not give an adequate verbal warning that deadly force would be used. (*Id.* ¶ 27.) Plaintiffs further allege that no gun was pointed at police, but that police officers recovered a gun subsequent to the fatal shooting of Decedent. (*Id.* ¶¶ 31, 32.) Plaintiffs allege "the alleged gun was tampered with or planted by the Defendant officers involved in shooting Decedent." (*Id.* ¶ 32.)

Plaintiffs now bring this 42 U.S.C. § 1983 case, along with state law claims. Plaintiff Elizabeth Cruz, the mother of Decedent, sues individually and in her representative capacity on behalf of Decedent, while Plaintiff Hilarino Aparicio, Decedent's father, sues in his individual capacity. (*Id.* ¶¶ 4, 5.) Based on the allegations, Plaintiffs bring eight causes of action against Defendants:

- Count 1: excessive force under § 1983 against all Defendants;
- Count 2: denial of due process under § 1983 against all Defendants;
- Count 3: custom, policy, and practice of using lethal force before using non-lethal force in violation of the Fourth, Fifth, and Fourteenth Amendments against the City, Chief Nisleit, and Does 1 through 3;
- Count 5:[1] failure to properly train police officers under § 1983 against the City, Chief Nisleit, and Does 1 through 3;

---

[1] Plaintiffs omit a Count 4 from their FAC.

- Count 6: wrongful death in violation of California Government Code § 815.2(a) against all Defendants;
- Count 7: wrongful death in violation of California Government Code § 820 and California common law against all Defendants;
- Count 8: negligent failure to train against the City, Chief Nisleit, and Does 1 through 3; and
- Count 9: violation of the Bane Act, California Civil Code § 52.1, against all Defendants. (*See generally id.*)

Defendants move to dismiss all of Plaintiffs' claims under Federal Rules of Civil Procedure 8 and 12(b)(6). (*See generally* Doc. No. 19.)

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] pleading that [is] needlessly long, or . . . highly repetitious, or confused, or consist[s] of incomprehensible rambling" violates Rule 8(a). *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011); *see also Davis v. Unruh*, 677 Fed. App'x 456, 456–57 (9th Cir. 2017) (affirming dismissal of an amended complaint that consisted of 159 pages and contained 172 pages of exhibits).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. However, "some threshold of plausibility must be crossed at the outset" before a case can move forward. *Id.* at 588

(internal quotations and alterations omitted).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the first amended complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

### III. DISCUSSION

Defendants point to numerous alleged deficiencies in Plaintiffs' FAC. The Court addresses each in turn.

As an initial matter, Defendants assert the Court should dismiss all claims for failure to comply with Rule 8 because Plaintiffs fail to identify on whose behalf each claim is brought. (Doc. No. 24-1 at 8.)[2] Plaintiffs respond the FAC clearly identifies three Plaintiffs, and each are entitled to relief for the actions alleged in each count. (Doc. No. 30 at 4.)

The Court finds the FAC meets the threshold of Rule 8, as Defendants may determine from the FAC that, without express limitation, the claims are brought on behalf of all Plaintiffs. Accordingly, the Court **DENIES** Defendants' motion to dismiss under Rule 8 on this basis.

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

### A. Claims Against Defendant Nisleit

Defendants seek wholesale dismissal of all claims against Defendant Nisleit. (Doc. No. 24-1 at 9.) Plaintiffs bring all Counts against Nisleit, including Counts 1, 2, 3, and 5 under § 1983 for excessive force, denial of due process, and *Monell*[3] claims, as well as several state law claims. (*See generally* FAC.) Plaintiffs' FAC fails to specify whether any of the claims against Nisleit are in his individual or official capacity. (*See generally id.*) Defendants generally contend there are no factual allegations to support a claim against Nisleit in his individual capacity, and the official capacity claims against Nisleit should be dismissed as redundant of Plaintiffs' claims against the City. (Doc. No. 24-1 at 9.) In response, Plaintiffs contend that individual capacity claims may proceed against Nisleit and recite various allegations which support their claims under *Monell* and for failure to train. (Doc. No. 30 at 7–9.)

A suit brought against a defendant in his official capacity is effectively a suit against the government unit that employs the defendant, *i.e.*, the City. *Monell*, 436 U.S. at 690 n.55. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . , local government units can be sued directly for damages and injunctive or declaratory relief."). "There is no *respondeat superior* liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680–81 (9th Cir. 1984)); *see also Iqbal*, 556 U.S. at 676 ("Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "[I]f individuals are being sued in their official capacity as municipal officials and the

---

[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1987).

municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed." *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

Thus, to the extent Plaintiffs assert § 1983 claims against Chief Nisleit in his official capacity, such claims are duplicative of Plaintiffs' claims against the City and are **DISMISSED without leave to amend**.

Defendants' briefing lacks caselaw and authority to support its position that all other claims against Nisleit should be dismissed wholesale. *See Officia Imaging, Inc. v. Langridge*, No. SA CV 17-2228-DOC-DFMx, 2018 WL 6137183, at *13 (C.D. Cal. Aug. 7, 2018) (denying portion of motion to dismiss which contained undeveloped argument); *Strother v. Baldwin*, No. 16-cv-00255-TLN, CKD, 2017 WL 6017137, at *7 (E.D. Cal. Dec. 5, 2017) (declining to consider portion of argument raised in motion to dismiss, reasoning "the Court is not required to address perfunctory and undeveloped arguments.") (internal quotation marks omitted). Accordingly, Defendants' motion to dismiss is **DENIED** to the extent it seeks wholesale dismissal of all claims against Nisleit in his individual capacity. The Court will analyze each claim against Nisleit below pursuant to 12(b)(6).

**B.  Claims Against Sergeant Ruggiero and Officers Avalos and Tafoya**

Defendants also seek wholesale dismissal of all claims against Sergeant Ruggiero and Officers Avalos and Tafoya (collectively, "Officer Defendants") on the basis that Plaintiffs fail to allege any actions taken by Officer Defendants. (Doc. No. 24-1 at 10.) Plaintiffs bring Counts 1, 2, 5, 6, and 8 against the three officers. (*See generally* FAC.) The claims include excessive force, denial of due process, two wrongful death claims, and violation of the Bane Act. (*Id.*)

Plaintiffs respond that the FAC "alleges that the decedent was shot by on-duty Police Officers Defendants. The on-duty Police Officers are specifically name [sic] in the caption and exhibit B." (Doc. No. 30 at 9.) Upon review, Exhibit B to the FAC does not name any officers, merely stating "San Diego Police" and "San Diego Police Department Police

Officers." (*See* Doc. No. 21-2 at 1–5.) However, Plaintiffs' FAC states "above named Police Defendants fired numerous gunshots" and that "above named Police Defendants should have employed non-lethal methods." (FAC ¶¶ 13, 14; *see also id.* ¶ 17.) The FAC also refers to "Defendant Police Officers" (*id.* ¶ 15), and the "involved officers" (*id.* ¶ 16). While not a model of clarity, Defendants and the Court may infer as to who Plaintiffs refer. Additionally, similar to the analysis with Defendant Nisleit, the wholesale dismissal of all claims against Sergeant Ruggiero and Officers Avalos and Tafoya is premature at this stage. Accordingly, Defendants' motion to dismiss is **DENIED** to the extent it seeks wholesale dismissal of all claims against Officer Defendants.

### C. Claims Against the City of San Diego

Defendants also argue Plaintiffs fail to plead any facts against the City in its first claim (excessive force in violation of the Fourth Amendment and § 1983) and second claim (denial of due process in violation of the Fourteenth Amendment and § 1983). (Doc. No. 24-1 at 10.)

Under *Monell*, a municipality such as the City is not liable under § 1983 unless "official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691. More specifically, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In the instant case, Count 1 merely states that "[a]ll named defendants in some manner contributed to the use of excessive force," (FAC ¶ 26), while Count 2 states "Defendants, and each of them, deprived Decedent and Plaintiffs of their right to life, liberty and familial relationships without due process of law[,]" (*id.* ¶ 38). Thus, Plaintiffs' FAC does not "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. Of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). For these reasons, Defendants' motion to dismiss Counts 1 and 2 against the City is **GRANTED with leave to amend**.

### D. All Causes of Action

#### 1. Count One: Excessive Force

Defendants raise several bases as to why the Court should dismiss Plaintiffs' excessive force claim. Specifically, Defendants assert Plaintiffs confuse their wrongful death and survivor claims, fail to plead sufficient facts to state a claim against Nisleit, and fail to allege sufficient facts to state a claim for relief. The Court addresses each issue in turn.

##### a. Survivor Action

Defendants assert Plaintiffs mix their wrongful death and survivor claims throughout the FAC. (Doc. No. 24-1 at 8, 10–11.) In the FAC, Plaintiffs allege they "bring this claim as successors-in-interest to the Decedent . . . and seek both survival and wrongful death damages for the violation of [Decedent's] civil rights." (*Id.* ¶ 33.)

Plaintiffs respond they may include alternative or different types of relief, and that each plaintiff is entitled to relief under each cause of action. (Doc. No. 30 at 4–5.) In reply, Defendants assert the individual Plaintiffs do not have standing to allege a survival action for excessive force on their own behalf. (Doc. No. 32 at 2–3.) The Court finds Defendants are correct that this excessive force claim is impermissibly mixed with language of a wrongful death claim and requires correction.

Plaintiffs' first claim for excessive force is a § 1983 survival action, which is separate from any wrongful death claims brought pursuant to state law. This is because there is no "wrongful death" claim under § 1983. *Estate of Lopez ex rel. Lopez v. Torres*, 105 F. Supp. 3d 1148, 1159 (S.D. Cal. 2015) ("The confusion seems to be in that some courts (primarily in unpublished dispositions) have allowed claims for wrongful death under § 1983 to proceed. . . . What is clear from these cases is that even if the claim was described in the pleadings as a wrongful death claim under section 1983, the courts only allowed such claims to be maintained if they were construed as Fourth Amendment excessive force claims."). Thus, while the Court dismisses Count 1, as explained further below, the Court cautions Plaintiffs they may not make wrongful death allegations nor seek wrongful death

damages under their excessive force claim.

Moreover, "survival actions . . . are based on injuries incurred by the decedent." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013). "In a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained. In a wrongful death action, by comparison, the decedent's dependents may only pursue claims for personal injuries they have suffered as a result of a wrongful death." *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994).

Defendants correctly argue that Plaintiffs cannot assert their excessive force claim in their personal capacities. (Doc. No. 32 at 3.) Courts have held that constitutional rights under § 1983 are personal to the individual and may not be asserted by a third party. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) ("[T]he general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights."); *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (holding that victim's children "were not directly subjected to the excessive use of state force and therefore cannot maintain personal causes of action under section 1983 in reliance on this Fourth Amendment theory"); *see, e.g.*, *Alderman v. United States*, 394 U.S. 165, 174 (1969) ("We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.").

In order for Defendants to properly answer and defend the allegations, the claims must be amended to properly set forth the causes of action. Accordingly, Defendants' motion to dismiss is **GRANTED** as to Plaintiffs' *individual* claims for excessive force, and those individual claims are **DISMISSED with prejudice**.

### b. Defendant Nisleit

Defendants next contend the FAC is unclear as to whether Plaintiffs bring the excessive force claim against Nisleit in his individual capacity, but if so, the claim fails

because it does not allege any factual allegations specific to him. (Doc. No. 24-1 at 9.) Indeed, the heading for Count One states it is brought "against all Defendants" but makes no mention of Nisleit otherwise. (*See* FAC ¶¶ 22–35.)

To establish a prima facie case of supervisor liability, a plaintiff must show facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

A police chief is liable in his individual capacity if he "set[] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (alteration in original) (noting ratification, poor investigation, or failure to terminate series of events may make supervisor liable). Here, the FAC makes no allegation that Nisleit participated in, directed, or was even aware of Decedent's shooting. Accordingly, Count One is **DISMISSED with leave to amend** as to Nisleit in his individual capacity.

### c.    Failure to State a Claim

Next, the Court turns to whether Plaintiffs sufficiently plead their excessive force claim on behalf of Decedent. The Fourth Amendment protects against the unreasonable seizure of persons. U.S. Const. amend. IV. The Clause is applicable to the States by the Fourteenth Amendment. *See Ker v. California*, 374 U.S. 23, 30 (1963). "Even if a seizure is reasonable in a particular circumstance, *how* that seizure is carried out must also be reasonable." *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 619 (9th Cir. 2023). "So the Fourth Amendment also prohibits the use of excessive force. Our 'calculus of reasonableness' in these circumstances 'must embody allowance for the fact that police officers are often forced to make split-second judgments' and we do not apply the '20/20 vision of hindsight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (citations

1 omitted).

2   A Fourth Amendment excessive force § 1983 claim is cognizable where "officers employed an 'objectively unreasonable' amount of force under the 'totality of the circumstances.' This inquiry requires balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham*, 490 U.S. at 396) (citations omitted). Courts consider "(1) 'the type and amount of force inflicted,' (2) the severity of the crime at issue,' (3) 'whether the suspect posed an immediate threat to the safety of the officers or others,' and (4) 'whether the suspect was actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *O'Doan v. Sanford*, 991 F.3d 1027, 1037 (9th Cir. 2021). "But this list isn't exhaustive; [courts] may also consider other relevant factors, such as 'the availability of less intrusive alternatives to the force employed, whether proper warnings were given[,] and whether it should have been apparent to officers that the person they used force against was emotionally disturbed.'" *Id.* (quoting *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017)). "Of these, the 'immediate threat to safety' factor is the most important.'" *Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022) (quoting *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021)).

Plaintiffs allege Defendants violated Decedent's Fourth Amendment right against excessive force when Officer Defendants used lethal force against Decedent. (FAC ¶¶ 24–28.) However, in applying the *Graham* factors and drawing all reasonable inferences in Plaintiffs' favor, each *Graham* factor favors Defendants. Officer Defendants were aware of Decedent's identity as he was a suspect in a shooting which happened earlier in the evening. (*Id.* ¶ 30); *see Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985) (If "there is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given"). Decedent then ran from police to evade arrest. (FAC ¶ 31.) While unclear from the FAC whether Officer Defendants gave a warning prior to shooting Decedent, the FAC states Officer Defendants

"did not give an *adequate* verbal warning that deadly force would be used prior to the shooting of [Decedent]" and that Officer Defendants "did not announce themselves as police prior to the fatal shooting." (*Id.* (emphasis added).) It is further unclear from the FAC whether Decedent was armed, but Plaintiffs state "[n]o gun was pointed at the police" and that a gun was located in near proximity to Decedent after he was shot. (*Id.* ¶¶ 31, 32.)

Plaintiffs argue Decedent "posed no threat to police officers" as he evaded arrest. (*Id.* ¶ 31.) Plaintiffs also allege that because the gun was located near Decedent's left hand, although he was right-handed, the alleged gun was tampered with or planted by Officer Defendants. (*Id.* ¶ 32.) However, these are conclusions, rather than factual allegations that the Court must presume to be true on a motion to dismiss. Moreover, while Plaintiffs "believe and allege the Decedent suffered a serious injury to his head, several years ago, and he may have suffered brain damage[,]" Plaintiffs fail to adequately allege Decedent was suffering from a mental illness or that it should have been apparent to Officer Defendants that Decedent had a mental illness. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (stating the *Graham* factors are not exclusive, and "[o]ther relevant factors include the availability of less intrusive force, whether proper warnings were given, and whether it should have been apparent to the officers that the subject of the force used was mentally disturbed").

The Court could speculate that there might have been less intrusive alternatives to the force employed; however, it would be speculation. Officer Defendants made a split-second decision as to how to stop a suspect of a shooting evading arrest that may have been armed. Speculating that the Officer Defendants might have been able to employ non-lethal methods would be the kind of 20/20 hindsight the Court should not employ, and "[w]hile the existence of less forceful options to achieve the governmental purpose is relevant, 'police officers . . . are not required to use the least intrusive degree of force possible.'" *Marquez v. City of Phoenix*, 693 F.3d 1167, 1174 (9th Cir. 2012) (quoting *Forrester v. City of San Diego*, 25 F.3d 804, 807–08 (9th Cir. 1994)). Given the circumstances and the lack of evidence of any available less intrusive alternatives, these factors weigh in favor of the

use of force.

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss Count 1 for excessive force **with leave to amend**.

### 2. Count Two: Substantive Due Process

Defendants argue Plaintiffs' second claim for denial of due process fails to comply with Rule 8 because it unclearly references both Decedent's and Plaintiffs' constitutional rights. (Doc. No. 24-1 at 8 (citing FAC ¶ 38).) The FAC alleges Decedent "had a cognizable interest under the *Due Process* Clause of the Fifth and Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property . . . including but not limited to, unwarranted interference with his familial relationships with is [sic] mother, and Plaintiff Cruz of the economic support and relationship with Decedent without *due process* of law." (FAC ¶ 37.)

This language suggests Plaintiffs seek compensation in a representative capacity for Decedent's due process rights, while in the same sentence suggesting Plaintiff Cruz also seeks damages for her own loss. There is no mention of Plaintiff Aparicio, despite Plaintiffs' assertion that each claim is brought on behalf of all Plaintiffs. Because it is unclear in what capacity Plaintiffs pursue their claim and what damages they seek to recover under this claim, Plaintiffs have failed to provide a "short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2). This claim thus warrants dismissal with leave to amend to state their cause of action clearly and concisely. *See Carrigan v. Cal. State Legislature*, 263 F.2d 560, 565–66 (9th Cir. 1959) (holding the trial court has discretion to determine whether there has been reasonable compliance with Rule 8).

Defendants also assert this Fourteenth Amendment claim is properly analyzed under the Fourth Amendment and is duplicative of Decedent's claim for excessive force. (Doc. No. 24 at 12.) Plaintiffs respond that once excessive force is found, damages for a deprivation of due process is proper as an alternative form of relief. (Doc. No. 30 at 14.)
///

On this basis, too, the Court agrees with Defendants. Plaintiffs fail to explain how the allegations undergirding their Fourth Amendment claim is not duplicative of the allegations supporting their more general substantive due process claim. As the Ninth Circuit has observed, because the Fourth Amendment addresses pretrial deprivations of liberty "[the Fourth] Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see Monday v. McDonnell*, No. CV 15-3514 PA (JEMx), 2015 WL 13915791, at *4 (C.D. Cal. Dec. 18, 2015) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, rather than the more generalized notion of 'substantive due process,' must be the guide for analyzing those claims."); *Wheat v. Lee*, No. C-12-6299 EMC, 2013 WL 2285174, at *7 (N.D. Cal. May 23, 2013) ("This Court thus finds that to the degree that Plaintiff's Fourteenth Amendment claim is based on allegations that his initial arrests were without probable cause, such complaints are more appropriately addressed by the Fourth Amendment claim in his complaint.").

Plaintiffs' due process claim fails to plead sufficient factual content for both the Court and Defendants to understand the allegations made and damages sought. Moreover, Plaintiffs' due process claim is duplicative of their excessive force claim, and such complaints are more appropriately addressed by the Fourth Amendment claim in the FAC. Accordingly, the motion to dismiss is **GRANTED** as to Plaintiffs' second cause of action **with leave to amend** to provide a clear and concise statement of the relief sought.

### 3.   Counts Three & Five: *Monell* Claims

Defendants next move to dismiss the *Monell* claims based on an unconstitutional custom, policy, and practice (Count 3) and failure to train law enforcement officers (Count 5). (Doc. No. 24-1 at 12–14.)

Cities, counties, and other local government entities are subject to claims under § 1983. *Monell*, 436 U.S. 658. While municipalities, their agencies, and their supervisory

personnel cannot be held liable under § 1983 on any theory of *respondeat superior* or vicarious liability, they can be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Id.* at 691–93. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . ." *Id.* at 694.

Three separate theories of *Monell* liability may be alleged against a municipality: (1) an unconstitutional policy, custom or practice, (2) inadequate training and/or (3) ratification. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018). First, "a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'" *Id.* (quoting *Monell*, 436 U.S. at 694). Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Third, "a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2018)).

Plaintiffs allege *Monell* liability under two theories: (1) an unconstitutional policy, custom, or practice, and (2) inadequate training. (FAC ¶¶ 41–63.)

### a. Defendant Nisleit

Under § 1983, a government official is liable only for their own misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit . . . where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own

misconduct."). A supervisor may be liable in his individual capacity (1) "for his own culpable action or inaction in the training, supervision, or control of his subordinates;" (2) "for his acquiescence in the constitutional deprivation;" or (3) "for conduct that showed a reckless or callous indifference to the rights of others." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (cleaned up). Supervisory officials may be held liable for failure to institute adequate policies based on their deliberate indifference, which may be shown through knowledge and acquiescence. *Cross v. City & Cnty. of S.F.*, 386 F. Supp. 3d 1132, 1153 (N.D. Cal. 2019).

While unclear, Plaintiffs' FAC appears to hold Defendant Nisleit individually liable for "train[ing] police for 'combat shooting'—empty the gun instead of non-lethal methods being employed as first option." (FAC ¶ 45.) The FAC alleges Nisleit "had either actual or constructive knowledge of the deficient policies, practices, and customs" and "condoned, tolerated, and through actions and inactions thereby ratified such policies." (*Id.* ¶ 47.) Nisleit "failed and refused to investigate or take corrective measures, provide supervision or training to stop the unconstitutional policy of using deadly force as the preferred alternative, and ongoing widespread violations of suspects [sic] constitutional rights, and took no remedial steps or action to prevent such violations of constitutional rights[.]" (*Id.* ¶ 51.) Plaintiffs also allege the policies, practices, and customs maintained by Nisleit was the moving force behind Decedent's injury. (*Id.* ¶ 49.)

Defendants argue Plaintiffs' claims fail because they do not allege any factual allegations specific to Nisleit, including that he took any action to harm Decedent, participated in another's action, or failed to act in some way. (Doc. No. 24-1 at 9.) The Court agrees. While Plaintiffs allege Nisleit upheld unconstitutional policies and failed to train officers on non-lethal force, Plaintiffs cite no cases of San Diego police officers unnecessarily using lethal force. Thus, Plaintiffs' have not shown a pattern of constitutional violations to put Nisleit on notice about deficient training. Accordingly, the Court **GRANTS** the motion to dismiss *Monell* claims, Counts 3 and 5, against Defendant Nisleit in his individual capacity **with leave to amend**.

### b. Unconstitutional Custom, Policy, and/or Practice

Plaintiffs allege that "[f]or some time prior to 11/13/2023, Defendants City of San Diego, Police Chief David Nisleit, and Does 1–3 trained police for 'combat shooting'—empty the gun instead of non-lethal methods being employed as first option." (FAC ¶ 45.) Plaintiffs assert that due to this policy and practice, Decedent was severely injured and lost his life. (*Id.* ¶ 46.) Plaintiffs further assert the City, Nisleit, and Does 1–3 "had either actual or constructive knowledge of the deficient policies, practices, and customs" and "condoned, tolerated, and through actions and inactions thereby ratified such policies." (*Id.* ¶ 47.)

To establish liability on the part of governmental entities based on an unconstitutional policy or custom, a plaintiff must allege: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton*, 489 U.S. at 389–90). Even if there is no formal or written official policy, a public entity may be liable for a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The custom or practice must "be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

Plaintiffs have not identified a formal policy of the City or the Police Department, but appear to allege a practice or custom. (*See* FAC ¶¶ 41–54.)

To allege a longstanding practice or custom which constitutes the standard operating procedure of a local government entity, Plaintiffs must allege more than a single, isolated incident. *See Meehan v. Los Angeles Cnty.*, 856 F.2d 102, 107 (9th Cir. 1988) (finding two

17

incidents were insufficient to establish *Monell* custom); *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 943 (S.D. Cal. 2022) (granting motion to dismiss *Monell* claim based on single instance of alleged unconstitutional conduct); *Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1016 (C.D. Cal. 2022) (granting motion to dismiss *Monell* claim based on policy, practice, or custom because the complaint only described one incident of unconstitutional activity which is not sufficient to impose liability under *Monell*). Here, Plaintiffs' FAC falls short as it only alleges a single incident, Decedent's death, in support of the City's alleged custom or practice. As currently pled, a single incident cannot withstand a motion to dismiss. The Court **GRANTS** Defendants' motion to dismiss Count 3 **with leave to amend**.

### c. Failure to Train

Plaintiffs' fifth claim alleges the City and Does 1–3 failed to train its officers with regard to using deadly force. (FAC ¶¶ 55–63.) Plaintiffs contend that due to inadequate training, Officer Defendants "were not able to handle the usual and recurring situations with which they must deal, including making with contact [sic] unarmed and armed suspects." (*Id.* ¶ 57.) Defendants move to dismiss, asserting Plaintiffs' allegation are conclusory, fail to allege a constitutional violation, and fail to allege any pattern of similar constitutional violations that would support a finding of deliberate indifference. (Doc. No. 24-1 at 14.)

Failure to train may serve as a basis for § 1983 municipal liability only "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference: "(1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the

constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021).

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train in order to demonstrate the public entity's notice that a training policy is deficient and the entity's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees . . . ." *Connick*, 563 U.S. at 62 (citing *Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)).

Here, the Court has already determined that Plaintiffs have failed to adequately allege a deprivation of a constitutional right. *See supra* §§ III.1–2. Moreover, Plaintiffs cannot establish the inadequacy of an existent training program based upon just one alleged constitutional violation. *See Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022) ("While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious, an inadequate training policy itself cannot be inferred from a single incident.") (citations and internal quotation marks omitted). While Plaintiffs allege that "San Diego Police Department has killed four persons[,]" Plaintiffs fail to provide any factual allegations to support this statement or whether these situations were factually analogous. Although courts are mindful that, at the motion to dismiss stage, plaintiffs necessarily have "limited access to details of governmental policies and training procedures prior to discovery," plaintiffs relying on prior incidents must still allege incidents that are "substantially similar in character." *Seever v. City of Modesto*, No. 121CV01373JLTEPG, 2022 WL 17418355, at *3 (E.D. Cal. Dec. 5, 2022). "[T]he correct analysis focuses on the similarity between the 'factually pertinent' aspects of the prior incidents," including "the degree or type of force used by officers." *Id.* (quoting *McCoy v. City of Vallejo*, No. 2:19-cv-001191-JAM-CKD, 2020 WL 374356, at * 4 (E.D. Cal. Jan. 23, 2020)).

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss Count 5 **with leave to amend**.

### 4. State Law Claims

"With respect to supplemental jurisdiction . . . , a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citations omitted); *see Holt v. First Franklin Fin. Corp.*, No. C 10-5929 SBA, 2011 WL 4595195, *4 (N.D. Cal. Sept. 30, 2011) ("When the federal claims that served as the basis for jurisdiction are eliminated, either through dismissal by the court or by a plaintiff amending his or her complaint, federal courts may decline to assert supplemental jurisdiction over the remaining state law causes of action.") (citing 28 U.S.C. § 1367(c)(3)).

Here, because the Court is dismissing the only federal claims at the outset of the litigation, it is more appropriate to decline supplemental jurisdiction over the state law claims than to wade into the plainly state law issues that remain in this case. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss and **DENIES AS MOOT** Defendants' motions to strike and for a more definite statement. (Doc. No. 24.) Should Plaintiffs choose to do so, where leave is granted, they must file a second amended complaint curing the deficiencies noted herein by **March 11, 2025**. Defendant must file a responsive pleading no later than **March 25, 2025**.

**IT IS SO ORDERED.**

Dated:  February 24, 2025

Hon. Anthony J. Battaglia
United States District Judge