UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CRUZ and HILARINO APARICIO,<br><br>                                   Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, CALIFORNIA, a Municipal Corporation; et al.,<br><br>                                   Defendants. | Case No.:  24-cv-00287-AJB-MSB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE**<br><br>**(Doc. No. 36)** |

Presently before the Court is Defendants City of San Diego (the "City"), Chief David Nisleit, Sergeant Matthew Ruggiero, Officer Jeremy Avalos, and Officer Jonah Tafoya's (collectively, "Defendants") motion to dismiss Plaintiffs Elizabeth Cruz and Hilarino Aparicio's (collectively, "Plaintiffs") Second Amended Complaint ("SAC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] (Doc. No. 36.) Defendants also seek to strike portions of Plaintiffs' SAC which they allege are impertinent, immaterial, and scandalous under Rule 12(f). (*Id.*) For the reasons stated herein, the Court **GRANTS in part** and **DENIES in part** Defendants' motions to dismiss and to strike.

---

[1]      All future references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

1

## I.    BACKGROUND

This action arises out of the death of Imanol Aparicio ("Decedent") who was shot by on-duty police officers on or about November 13, 2023. (SAC, Doc. No. 35, ¶¶ 3, 12.) Plaintiffs allege that when police officers encountered Decedent, he ran from the police to evade arrest. (*Id.* ¶ 33.) In response, Police Officers fired numerous gunshots at Decedent. (*Id.* ¶ 13.) After Decedent was shot with the first bullet, he was incapacitated. (*Id.* ¶ 30.) Even after the officers saw that Defendant was laying prone and incapacitated, they continued to fire shots into his body. (*Id.* ¶¶ 13, 16.)

Plaintiffs further allege that Decedent suffered a serious head injury several years prior, which may have caused brain damage. (*Id.* ¶ 33.) At the time of the incident, Defendants were aware of Decedent's identity and special needs. (*Id.*) Plaintiffs allege the officers did not announce themselves as police prior to the fatal shooting, and did not give an adequate verbal warning that deadly force would be used. (*Id.* ¶ 29.) Plaintiffs further allege that no gun was pointed at police. (*Id.* ¶ 33.)

Finally, Plaintiffs allege that Defendants City of San Diego, Police Chief David Nesleit, and Does 1–3 trained police for "combat shooting," wherein police are trained to "empty" their gun instead of first employing non-lethal methods. (*Id.* ¶ 18.) This policy requires officers to continue shooting a suspect, even after the suspect is incapacitated. (*Id.*) Defendants City of San Diego, Police Chief David Nesleit, and Does 1–3 were aware that California congressional hearings found such a policy and practice to result in excessive force and death and that, as a result of such findings, California amended state laws to direct use of non-lethal force as a preference to lethal force. (*Id.* ¶¶ 48, 59.) Despite being aware of these findings and directives, Defendants continued to implement and train officers to implement the policy preferring lethal force, including the policy of emptying firearms into incapacitated suspects. (*Id.*)

Plaintiffs now bring this 42 U.S.C. § 1983 case, along with state law claims. Plaintiff Elizabeth Cruz, the mother of Decedent, sues individually and in her representative capacity on behalf of Decedent. (*Id.* ¶ 4) Additionally, Plaintiff Hilarino Aparicio,

Decedent's father, sues individually and in his representative capacity. (*Id.* ¶ 5.) Based on the allegations, Plaintiffs bring the same eight causes of action against Defendants as raised in the First Amended Complaint. (*See generally id.*)

Defendants move to dismiss all of Plaintiffs' claims pursuant to Rule 12(b)(6) and to strike certain allegations pursuant to Rule 12(f). (*See generally* Doc. No. 36.)

## II.    REQUEST FOR JUDICIAL NOTICE

Defendants request the Court take judicial notice of specific allegations within Plaintiffs' initial complaint and First Amended Complaint ("FAC"), recasting the allegations as "admissions" by Plaintiffs. (Doc. Nos. 36-2 at 1-2 (request for judicial notice); 36-2 at 3–24 (Initial Complaint); 36-2 at 34–54 (First Amended Complaint).)

A court may take judicial notice of court filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). "However, while the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents are not." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 940 (S.D. Cal. 2024) (internal punctuation and citation omitted).

The Court does not consider allegations in previous complaints, which have been amended, as admissions of facts. *See Ramirez v. Cnty. Of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (quotations omitted). Accordingly, with the limitation above in mind, the Court **GRANTS** Defendants' request (Doc. No. 36-2.) pursuant to Rule 201(c)(2) of the Federal Rules of Evidence and takes judicial notice of Plaintiffs' initial Complaint (36-2 at 3-24.) and First Amended Complaint (Doc. Nos. 36–2 at 34–54.) for the limited purpose of identifying that these filings and the allegations therein exist.

## III.    MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendants seek to dismiss Plaintiffs' SAC against all Defendants pursuant to Rule 12(b)(6) for numerous alleged deficiencies.

24-cv-00287-AJB-MSB

## A.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. However, "some threshold of plausibility must be crossed at the outset" before a case can move forward. *Id.* at 588 (internal quotations and alterations omitted).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the second amended complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## B.    Analysis

The Court will address each of Defendants' arguments for dismissal in turn.

### 1.    Defendants' Reliance on Plaintiffs' FAC

As an initial matter, Defendants rely heavily on allegations found within Plaintiffs' FAC which are not present in the SAC. (*See generally* Doc. No. 36-1.) This is improper. *See Ramirez*, 806 F.3d at 1008 ("It is well-established in our circuit that an amended

4

24-cv-00287-AJB-MSB

complaint supersedes the original, the latter being treated thereafter as non-existent.").

Defendants argue that "[a] prior pleading is admissible against the pleader as an admission" and thus the Court should consider allegations in Plaintiffs' FAC that do not exist in Plaintiffs' SAC. (Doc. Nos. 36-1 at 11; 36-2 at 2 (citing on *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705 (2d Cir. 1989)).) Defendants' sole basis for this proposition is a lone Second Circuit case. The Court agrees with Plaintiffs that Defendants' reliance is misplaced. (*See* Doc. No. 38 at 5.) In addition to being non-binding on this Court, *Andrews* is unpersuasive in the motion to dismiss context as it addresses the propriety of a district court's refusal to permit jurors to (1) be informed that the original complaint was amended and (2) examine the original complaint so that they could contrast it with the amended complaint. *See Andrews*, 882 F.2d at 707.

Regardless of *Andrews*, the Ninth Circuit has also held that "a statement in a complaint may serve as a judicial admission" at later stages of litigation. *See Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995) (considering an appeal of summary judgment). Defendants point to no authority, however, that extends this proposition so far afield as to undermine the standard for adjudicating Rule 12(b)(6) motions. In fact, "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007); *see also Shirley v. Univ. of Idaho, Coll. of L.*, 800 F.3d 1193, 1194 (9th Cir. 2015) (Kozinski, J., concurring) ("Inconsistency— even direct contradiction—between a current complaint and an earlier one is not a basis for dismissal. The fact that the earlier complaint is inconsistent may have collateral consequences in the litigation, including possible sanctions under Rule 11 or undermining the plaintiff's credibility, but it does not render the current complaint legally insufficient under Rule 12(b).") (citations omitted).

Although the Court has taken judicial notice of the existence of Plaintiffs' prior complaints, the factual allegations therein will not be considered in adjudicating the instant motion. *See Salvato v. Ocwen Loan Servicing, LLC*, No. 12-CV-0088 JLS POR, 2012 WL

24-cv-00287-AJB-MSB

3018051, at *4 (S.D. Cal. July 24, 2012) ("By striking or discounting the factual allegations contained in a pleading because they contradict an earlier version, courts would be improperly adjudicating a claim on the merits.").[2]

### 2.    Claims Against Officer Defendants

Once again, Defendants seek wholesale dismissal of all claims against Sergeant Ruggiero and Officers Avalos and Tafoya (collectively, "Officer Defendants") on the basis that Plaintiffs fail to allege any actions taken by Officer Defendants. (Doc. No. 36-1 at 9–10, 14–15.) Plaintiffs bring the excessive force, denial of due process, two wrongful death claims, and violation of the Bane Act. (*Id.* at 9–10.)

Plaintiffs respond that "[t]his argument was previously rejected by the Court" so "Defendant is precluded from rearguing the issue." (Doc. No. 38 5–6.) However, "[t]he law of the case doctrine does not apply here." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). "[I]nvoking the law of the case doctrine [on a motion to dismiss would] . . . h[o]ld plaintiffs to a higher standard than if they had pleaded their amended complaint originally." *Id.* Rather, the Court must "simply . . . consider[] the amended complaint on its merits."[3] *Id.*

Considering the substance of Defendants' argument, Plaintiffs' SAC states "the decedent was shot by on-duty Police Officer Defendants above named," "above named Police Defendants fired numerous gunshots at Decedent IMANOL APARICIO, including two shots after he was already down on the ground," "above named Police Defendants should have employed non-lethal methods first," Decedent "posed no immediate threat of death or serious injury to Defendant Police Officers above named," "[a]bove named Defendant Police did not show a reverence for human life, or the constitution or individual

---

[2]    Plaintiffs provide an explanation for the omitted allegations (Doc. No. 38 at 4–5), which Defendants vehemently oppose (Doc. No. 39 at 2). As Defendants provide no sound legal basis for the Court to consider allegations outside the SAC on a motion to dismiss, the Court need not wade into the dispute further at this stage of litigation and on the motion currently before it.

[3]    In addition to being legally unsound, Plaintiffs' law-of-the-case argument is logically irreconcilable with their stance that an amended pleading supersedes the original.

24-cv-00287-AJB-MSB

rights of Decedent to life and liberty," "above-named police officers were acting on the supposed and actual permission and consent of Defendant City of San Diego," and "[t]he conduct of all named police Defendants and DOES 1–10 was willful, wanton, malicious, and done with reckless disregard." (SAC ¶¶ 7, 12–15, 31, 42.)

While still not a model of clarity, Defendants and the Court may infer as to who Plaintiffs refer. Additionally, the wholesale dismissal of all claims against Sergeant Ruggiero and Officers Avalos and Tafoya is premature at this stage. Accordingly, Defendants' motion to dismiss is **DENIED** to the extent it seeks wholesale dismissal of all claims against Officer Defendants.

### 3. Excessive Force Claim

Plaintiffs' first cause of action is an excessive force claim brought on behalf of Decedent, as successors in interest to Decedent's estate, against all Defendants. (SAC ¶¶ 23–36.) Defendants raise several bases as to why the Court should dismiss Plaintiffs' excessive force claim. Specifically, Defendants assert Plaintiffs fail to plead sufficient facts to state a claim because Plaintiffs make no allegations of conduct by Defendant Officers, Plaintiffs rely on conclusory statements only, and Plaintiffs' claim against Chief Nisleit and the City are duplicative of their *Monell*[4] claims.[5] (Doc. No. 36-1 at 9–13.)

### i. Failure to State a Claim Against Defendant Officers

"Allegations of excessive force during an investigatory stop or arrest of a free citizen are examined under the Fourth Amendment's prohibition against unreasonable seizures." *Villanueva v. California*, 986 F.3d 1158, 1169 (9th Cir. 2021). "At th[e motion to dismiss] stage, our question is whether the officers employed an 'objectively unreasonable' amount

---

[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1987).

[5] The Court disagrees with Defendants' characterization that Plaintiffs are pleading a *Monell* claim against Chief Nisleit with their first cause of action. *Monell* claims against municipalities and claims for supervisory liability against individuals, though similar, are distinct. However, because Plaintiffs allege the same basis for supervisory liability against Chief Nisleit in their first and third causes of action, namely his involvement in the "combat shooting" policy, the Court will address the parties' arguments regarding the excessive force claim with the subsequent constitutionally violative policy claim. *See infra* § III.B.5.1.

of force under the 'totality of the circumstances.'" *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 619 (9th Cir. 2023) (quoting *Brooks v. Clark Cnty.*, 828 F.3d 910, 920, 922 (9th Cir. 2016)).

"Determining whether a particular use of force was reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Villanueva*, 986 F.3d at 1169 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "To assess the government interests, we evaluate a range of factors that include (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others (3) whether he was actively resisting arrest or attempting to evade arrest by flight, and any other exigent circumstances that existed at the time of the arrest." *Id.* (citation and internal quotation marks omitted); *see also Est. of Strickland*, 69 F.4th at 619 ("[T]his list isn't exhaustive; we may also consider other relevant factors, such as the availability of less intrusive alternatives to the force employed, whether proper warnings were given, and whether it should have been apparent to officers that the person they used force against was emotionally disturbed."). "In cases involving use of deadly force against a fleeing suspect, 'the Supreme Court has crafted a more definitive rule,' allowing an officer to use deadly force 'only if the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Villanueva*, 986 F.3d at 1169 (quoting *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020)).

Here, Plaintiffs allege that "[w]hen police officers named above encountered Decedent IMANOL APARICIO[,] he ran from the police to evade arrest." (SAC ¶ 33.) "The involved police officers did not announce themselves as police prior to the fatal shooting." (*Id.* ¶ 29.) "After Decedent was shot with the first bullet, he was incapacitated[;]" however "Defendant police officers continued to fire shots into the incapacitated body of Decedent[.]" (*Id.* ¶ 30.) There are no allegations that Decedent had a weapon of any kind, acted aggressively toward Defendant Officers, or had committed a

24-cv-00287-AJB-MSB

threatening or dangerous crime.[6] (*See generally* SAC.)

Considering the *Graham* factors, the lethal force used is compared against no allegations of a crime—let alone a severe crime—and no allegations demonstrating Decedent posed a threat to the safety of Defendant Officers or others. Decedent was attempting to evade arrest. However, "the Constitution does not tolerate the use of lethal force to 'seize an unarmed, nondangerous suspect by shooting him dead' in the absence of probable cause of a threat of serious physical harm." *Est. of Strickland*, 69 F.4th at 621 (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011)). Based on the totality of the circumstances as set forth in the SAC, Plaintiffs state a claim for excessive force against Defendant Officers.[7] Defendants' motion to dismiss with regard to the excessive force claim against Defendant Officers is **DENIED**.

### ii.   Failure to State a Claim Against the City

Next, Defendants argue Plaintiffs' excessive force claim as pleaded against the City is duplicative of their third and fifth *Monell* claims. (Doc. No. 36-1 at 13.) Plaintiffs fail to respond to this argument. (*See generally* Doc. No. 38; *see also* Doc. No. 39 at 3 ("Plaintiffs do not address why the excessive force claim is brought against the City of San Diego. The Court is authorized to find that Plaintiff's [sic] failure to respond to Defendants' arguments means Plaintiffs concedes [sic] the issue.").)

Under *Monell*, a municipality such as the City is not liable under § 1983 unless "official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691. More specifically, "it is when execution of a government's policy or custom, whether made

---

[6]   The crux of Defendants' argument is based improperly on allegations not within the SAC (*see* Doc. No. 36-1 at 10–12), which the Court will not consider, *see supra* § III.B.1.

[7]   Defendants challenge as "conclusory statements" Plaintiffs' allegations that Decedent posed no immediate threat of death or serious injury to Defendant Officers, other non-lethal options were available and would have been sufficient to disable Decedent, and Defendants were aware of Decedent's special needs but failed to accommodate those special needs. (Doc. No. 36-1 at 10–12 (citing SAC ¶¶ 15, 32, 33).) The Court need not resolve the parties' dispute regarding those allegations as the others not in dispute are sufficient to state a claim.

24-cv-00287-AJB-MSB

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

Considering Plaintiffs' theory of the City's liability regarding excessive force is the policy of "combat shooting," it is a *Monell* claim duplicative of the third and fifth causes of action. As such, the Court **GRANTS** Defendants' motion to dismiss the first cause of action as to the City. *See Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 940 (S.D. Cal. 2022) ("Courts may dismiss claims that essentially repeat another claim in the same complaint.").

### 4.    Denial of Due Process Claim

Plaintiffs' second cause of action asserts violation of Fourteenth Amendment due process rights to familial association against all Defendants. (SAC ¶¶ 37–42.) Defendants challenge the clarity of this cause of action pursuant to Rule 8 along with its sufficiency pursuant to Rule 12(b)(6).

### i.    Clarity

Defendants premise their first attacks on the basis that the claim is being brought on behalf of Decedent and a single Plaintiff. (Doc. No. 36-1 at 14.) To the extent the claim is brought on behalf of Decedent, Defendants assert it is duplicative of the excessive force claim, as the Court previously ruled. (*Id.*) To the extent it is brought on behalf of a single Plaintiff, Defendants assert the claim violates Rule 8 because it is unclear which of the two named Plaintiffs is asserting this claim. (*Id.*)

Plaintiffs assert that they have amended the second cause of action to clarify that it is brought by Plaintiffs in their individual capacity and not brought on behalf of the decedent." (Doc. No. 38 at 10–11.) "The claim is for a depr[i]vation of familial companionship without *due process* of law," which "is distinct from a claim arising under the Fourth Amendment." (*Id.*)

Despite their assertion to the contrary, Plaintiffs did not in fact amend the complaint to remove Decedent's name. As noted by Defendants, the second cause of action is now

"brought by Plaintiffs Imanol Aparicio," who is the decedent, "and Plaintiff for a violation of their right to *due process* of law before removing familial rights." (SAC ¶ 38.)

Considering Plaintiffs expressly disavow bringing this cause of action on behalf of Decedent and the Court's prior order finding such a claim brought on behalf of Decedent to be duplicative of the Fourth Amendment claim, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES with prejudice** the second cause of action to the extent it is pleaded on behalf of Decedent. The Court disagrees with Defendants that Plaintiffs' use of the singular rather than plural in one paragraph makes the cause of action unintelligible such that it violates Rule 8. However, the Court **GRANTS** Plaintiffs leave to amend ¶ 38 of the SAC to clarify which specific Plaintiff, or both, bring the second cause of action and to remove mention of Decedent.

### ii.    Failure to State a Claim Against Defendant Officers

In turning to the substance of Plaintiffs' second cause of action, the Court will consider whether the factual allegations state a Fourteenth Amendment claim for either Plaintiff.

"This circuit has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citing *Curnow ex rel. Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir. 1991)). "A claim asserting that police officers violated these Fourteenth Amendment rights during a police shooting must show that the officers' conduct 'shocks the conscience.'" *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). To determine whether conduct shocks the conscience, "the court must first ask 'whether the circumstances are such that actual deliberation by the officer is practical.'" *Wilkinson*, 610 F.3d at 554 (quoting *Porter*, 546 F.3d at 1137) (internal punctuation omitted).

"On one hand, the deliberate-indifference test applies if the situation at issue 'evolved in a time frame that permits the officer to deliberate before acting.'" *Ochoa*, 26 F.4th at 1056 (quoting *Porter*, 546 F.3d at 1137). "On the other hand, where a law

24-cv-00287-AJB-MSB

enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson*, 610 F.3d at 554. "Illegitimate objectives include 'when the officer had any ulterior motives for using force against the suspect, such as to bully a suspect or get even, or when an officer uses force against a clearly harmless or subdued suspect.'" *Ochoa*, 26 F.4th at 1056 (quoting *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018)).

Defendants argue that "Plaintiffs failed to plead any factual basis to support the requisite intent," which Defendants assert is the purpose-to-harm standard because the officers were making snap judgments in an escalating situation. (Doc. No. 36-1 at 15.) Defendants additionally argue that the alleged conduct "was clearly related to legitimate law enforcement objectives[.]" (*Id.*)

In opposition, Plaintiffs argue that they have alleged sufficient facts to state a claim under either the purpose-to-harm or deliberate-indifference standards because Defendants fired the initial shot when no one's safety was in danger and the subsequent shots were fired after Decedent was incapacitated. (Doc. No. 38 at 11.) "Each shot left the officers time to reflect and evidence both an intent to harm and indifference to the decedent's life and safety—thus to his parents right to companionship with their son." (*Id.*) "The conduct of the officers both shocks the conscience and demonstrate an indifference to the life and safety of decedent." (*Id.*)

Looking to the factual allegations of the SAC, Decedent was fleeing Defendant Officers, unarmed and without any indications that he posed a threat deadly or otherwise. Under such circumstances, the deliberate indifference standard applies. Defendant Officers "use[d] force against a clearly harmless" and subsequently clearly "subdued suspect," thus they "act[ed] with a purpose to harm unrelated to legitimate law enforcement objectives." *See Ochoa*, 26 F.4th at 1056. Therefore, either Plaintiff has stated a Fourteenth Amendment due process claim against Defendant Officers based on loss of familial association. The Court **DENIES** Defendants' motion to dismiss on this ground.

### iii.   Failure to State a Claim Against Chief Nisleit and the City

Defendants seek to dismiss the second cause of action as to Chief Nisleit and the City because there are no allegations against either found therein, so "[i]t is unknown under what basis Plaintiffs purport to bring this claim[.]" (Doc. No. 36-1 at 15–16.) Plaintiffs fail to address this argument with regard to this cause of action. (*See generally* Doc. No. 38; *see also* Doc. No. 39 ("Plaintiffs do not address why the Fourteenth Amendment claim also names Chief Nisleit and the City as Defendants.").)

The Court **GRANTS** Defendants' motion to dismiss this cause of action as to Chief Nisleit and the City.

### 5.   Custom, Policy, & Practice of Lethal Force

Plaintiffs' third cause of action asserts Chief Nisleit and the City maintained a custom, policy, and practice of using lethal force before non-lethal force in violation of Decedent's Fourth Amendment and Plaintiffs' Fourteenth Amendment rights. (SAC ¶¶ 43–56.)

### i.   Failure to State a Claim Against Chief Nisleit

Defendants assert that Plaintiffs fail to state a claim against Chief Nisleit in his individual capacity because "they fail[] to allege sufficient facts." (Doc. No. 36-1 at 18.) Specifically, Defendants argue "Plaintiffs cite no cases of San Diego officers unnecessarily using lethal force by 'continuing to fire bullets into suspects after they are incapacitated.'" (*Id.*)

"A supervisory official may be held liable under § 1983 only 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights' and is the moving force of a constitutional violation." *Crowley v. Bannister*, 734

24-cv-00287-AJB-MSB

F.3d 967, 977 (9th Cir. 2013) (cleaned up); *see also Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207–08) (cleaned up) ("The requisite causal connection can be established by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.").

In the third cause of action, Plaintiffs allege:

For some time prior to 11/13/2023, Defendants City of San Diego, Police Chief David N[i]sleit, and Does 1-3 trained police for "combat shooting"– empty the gun instead of non-lethal methods being employed as first option. The policy expressly calls for continuing to fire bullets into suspects after they are incapacitated. This practice and policy violates the Fourth, Fifth, and 14th Amendments to the United States Constitution as well as California Penal Code Section 835. This is the policy of the City of San Diego and San Diego Police Department, which is advances and approved of by Police Chief David N[i]sleit, and constitutes a reckless disregard for the constitutional rights of suspects and their family.

Defendants City of San Diego, Police Chief David Nesleit, and Does 1-3 were aware of the policy and State congressional hearings finding such policies and practice resulted in excessive force and death and directed non-lethal method be employed in preference to lethal force. In spite of the State legislative findings and amendments to the law in the State of California, Defendants, and each of them continued with the policy of lethal forces as a preference in their training and policy, including emptying firearms into incapacitated suspects who were in no position to pose a danger to law enforcement or the public after being incapacitated.

By reason of the policies and practices of Defendants City of San Diego and the Police Chief David Nesleit Imanol Aparicio, and DOES 1-10, DECEDENT was severely injured and subjected to pain and suffering and lost his life.

(SAC ¶¶ 47–49.)

Plaintiffs allege that Chief Nisleit trained officers on a "combat shooting" policy, wherein police are trained to "empty" their gun instead of first employing non-lethal methods and to continue shooting even after a suspect is incapacitated. (SAC ¶¶ 18, 47.) Defendants argue that "emptying a firearm into a suspect is not necessarily unconstitutional

but depends on the *Graham* factors." (Doc. No. 39 at 4.) However, Plaintiffs do not allege a policy that is metered by circumstances, but rather a policy where the response is uniformly lethal. Such a policy, taken as true, would be so deficient as to be a repudiation of the Constitution and the rights protected therein. *See Crowley*, 734 F.3d at 977. Finally, Plaintiffs provide sufficient allegations that this "combat shooting" policy was implemented by Defendant Officers who shot and killed Decedent by continuing to shoot even after Decedent was incapacitated, making the policy the moving force behind the constitutional violations.[8] (*See* SAC ¶¶ 13, 16, 49.) *See also Crowley*, 734 F.3d at 977.

The Court **DENIES** Defendants' motion to dismiss the third cause of action as to Chief Nisleit. However, Plaintiffs' first cause of action alleges the same theory of supervisory liability against Chief Nisleit with regard only to Decedent's Fourth Amendment rights. (*See* SAC ¶ 30; *see also* Doc. Nos. 36-1 at 13 (Defendants arguing the claims are duplicative); Doc. No. 38 (Plaintiffs failing to respond to this argument.) Because such a claim is entirely subsumed in the third cause of action, the Court **GRANTS** Defendants' motion to dismiss the first cause of action as to Chief Nisleit. *See Segura*, 647 F. Supp. 3d at 940.

### ii.    Failure to State a Claim Against the City

Defendants assert that Plaintiffs fail to state a claim against the City because they do "not establish a constitutional violation," they do "not plead facts to establish the persistency of this alleged policy," and the claim "appears to be alleging a failure to adequately train, which is redundant of Plaintiff's [sic] next claim." (Doc. No. 36-1 at 17.)

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." *Benavidez v. Cnty. of S.D.*, 993 F.3d 1134, 1153 (9th Cir. 2021). "In order to

---

[8]    Considering that the third cause of action is brought by Plaintiffs on behalf of Decedent and on behalf of themselves (*see* SAC ¶ 47), the constitutional violations at issue are a violation of Decedent's Fourth Amendment right to be free from excessive force and a violation of Plaintiffs' Fourteenth Amendment due process right, both of which Plaintiffs have sufficiently pleaded, *see supra* § III.B.3–4.

24-cv-00287-AJB-MSB

establish liability for governmental entities under *Monell,* a plaintiff must prove '(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,* 130 F.3d 432, 438 (9th Cir.1997)). "The Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Benavidez*, 993 F.3d at 1153 (internal citations omitted).

As the Court has found that Plaintiffs have sufficiently pleaded a Fourth Amendment claim on behalf of Decedent and a Fourteenth Amendment claim on behalf of themselves, the first element is met. With regard to the second element, Plaintiffs allege that the City has a formal policy of "combat shooting," wherein police are trained to "empty" their gun instead of first employing non-lethal methods and to continue shooting even after a suspect is incapacitated. (SAC ¶¶ 18, 47.) Considering the third element, such a policy—if taken as true—would amount to deliberate indifference to both Decedent's right to be free of excessive force and Plaintiffs' rights to due process, especially because Plaintiffs allege that the City was aware of, but disregarded, California congressional findings and laws disavowing such policies. (*See id.* ¶¶ 18, 48, 59.) Finally, under the circumstances alleged in the operative complaint, this "combat shooting" policy was implemented by Defendant Officers who shot and killed Decedent by continuing to shoot even after Decedent was incapacitated.[9] (*See* SAC ¶¶ 13, 16, 49.) Plaintiffs have pleaded sufficient facts in their

---

[9] The allegations that the City trained officers on this policy supports that the policy was the moving force behind Decedent's death; it does not make the claim duplicative of the fifth cause of action as

third cause of action to allege a *Monell* claim against the City.

Though cloaked in the language of a motion to dismiss, the majority of Defendants' argument challenges whether Plaintiffs have sufficiently demonstrated the actual existence of the policy. (*See* Doc. No. 36-1 at 16–17 (relying on case law addressing such claims on *summary judgment*).) Such an argument is improper on a motion to dismiss where factual allegations are taken as true.

The Court **DENIES** Defendants' motion to dismiss the third cause of action as to the City.

### 6.    Failure to Train

Plaintiffs' fifth cause of action asserts Chief Nisleit and the City failed to properly train police officers regarding use of deadly force. (SAC ¶¶ 57–66.)

"Failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees." *Benavidez v. Cnty. of S.D.*, 993 F.3d 1134, 1153 (9th Cir. 2021). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* at 1153–54. "To prevail on a claim of supervisory liability for failure to train, the plaintiff must show that the official was 'deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights.'" *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (quoting *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014)). Although a "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train[,]" *Connick v. Thompson*, 563 U.S. 51, 62 (2011), "the need to train officers

Defendants assert (*see* Doc. No. 36-1 at 17).

in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights[,]" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989) (citing *Tennessee v. Garner,* 471 U.S. 1 (1985)).

Defendants assert a laundry list of alleged deficiencies with little to no explanation. (*See* Doc. No. 36-1 at 18–19.) Specifically, Defendants argue (1) Plaintiffs' allegations are "conclusory," "vague," and "devoid of factual content to support this claim," (2) "Plaintiffs misapply federal Constitutional law and attempt to use a change in state law to support a Constitutional claim," (3) "Plaintiffs fail[] to allege a constitutional violation," (4) "Plaintiffs fail to allege any pattern of similar constitutional violations that would support a finding of deliberate indifference," and (5) "a list of officer-involved shootings does not establish that these incidents were substantially similar to Decedent's." (*Id.*)

However, as discussed *supra*, the Court has found that Plaintiffs have sufficiently alleged a Fourth Amendment violation on behalf of Decedent and a Fourteenth Amendment violation on behalf of themselves. Contrary to Defendants' assumptions regarding the necessity of a pattern, Plaintiffs allege the City and Chief Nisleit trained officers in a "combat shooting" policy—an action that, if taken as true, "could properly be characterized as deliberate indifference" because the policy fails "to train officers in the constitutional limitations on the use of deadly force" but rather requires the use of such force. *See Canton*, 489 U.S. at 390 n.10.

As with the third cause of action which is based on the same facts, Plaintiffs have pleaded sufficient facts in their fifth cause of action to allege both a *Monell* claim against the City and a supervisory liability claim against Chief Nisleit for failure to train officers with regard to the use of lethal force. Accordingly, the Court **DENIES** Defendants' motion as to the fifth cause of action.

### 7.    Wrongful Death

Plaintiffs' sixth and seventh causes of action allege wrongful death pursuant to California common and statutory law. (*See* SAC ¶¶ 67–79.) As a threshold matter,

Defendants assert that the two claims are duplicative of each other. (Doc. No. 36-1 at 20.) Plaintiffs misapprehend Defendants' stance by arguing the sixth cause of action is not duplicative of the § 1983 claims that precede it. (Doc. No. 38 at 19–20.) Based on both the allegations of the SAC and on Plaintiffs' explanation thereof, the Court finds the sixth and seventh causes of action are duplicative.

Turning to the substance of the wrongful death causes of action, Defendants assert the claims fail as a matter of law because Defendant Officers' use of force was reasonable based on the totality of the circumstances. (*See* Doc. No. 36-1 at 20.) The crux of Defendants' argument, again, is based improperly on allegations not within the SAC (*see* Doc. No. 36-1 at 10–12), which the Court will not consider, *see supra* § III.B.1.

"The elements of a wrongful death action are the underlying tort (in this case, battery), a resulting death, and damages." *B.B. v. Cnty. of L.A.*, 10 Cal. 5th 1, 31 (2020) (Liu, J., concurring). "The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." *A.B. v. Cnty. of S.D.*, 112 Cal. App. 5th 404, 416 (2025), *as modified on denial of reh'g* (July 18, 2025). Plaintiffs' "common law battery cause of action, like [their] section 1983 claim, requires proof that [Defendant Officers] used unreasonable force." *See Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008); *see also Hayes v. Cnty. of S.D.*, 57 Cal. 4th 622, 629 (2013) ("This court has long recognized that peace officers have a duty to act reasonably when using deadly force.").

As discussed *supra* § III.B.3, Plaintiffs' allegations, accepted as true, are sufficient to state a claim that Defendant Officers' use of lethal force under the circumstances was unreasonable. As such, Defendants' motion to dismiss the seventh cause of action is **DENIED** as to Defendant Officers.

The seventh cause of action is brought against Chief Nisleit and the City as being "vicariously liable." (SAC ¶¶ 73, 78.) Plaintiffs' allegations that Chief Nisleit is "vicariously liable" due to his official capacity as Chief of Police are properly brought

against the City pursuant to California Government Code § 815.2(a). (*See* Doc. No. 36-1 at 19–20 ("To the extent Plaintiffs bring these claims against Chief Nisleit in his official capacity, they are duplicative of the claims against the City. No facts establish a special relationship between Chief Nisleit and Plaintiffs or Decedent.").) Accordingly, the Court **GRANTS** Defendants' motion to dismiss the seventh cause of action as to Chief Nisleit only and **DENIES** the motion as to the City.

Considering that the sixth cause of action is duplicative of the seventh cause of action and the Court has found the latter states a claim, the Court **GRANTS** Defendants' motion to dismiss the sixth cause of action in its entirety. *See Segura*, 647 F. Supp. 3d at 940.

### 8.   Negligent Failure to Train

Plaintiffs' eighth cause of action asserts that "all the Defendants were negligent" for (a) failure to train employees concerning the use of force, (b) failure to assess the need to detain, arrest, and use force, (c) in their tactics and handling of the situation with Decedent, (d) the detention, arrest, and use of force against Decedent, (e) failure to give appropriate verbal warnings prior to shooting, and (f) failure to properly train and supervise all employees. (SAC ¶¶ 80–82.)

Defendants assert the claim must be dismissed as to Chief Nisleit and the City because "Plaintiffs fail[] to plead any factual support for supervisory liability," "facts to establish a special relationship resulting in any duty," or facts to establish "any relationship between a failure to train and any resulting harm." (Doc. No. 36-1 at 20–21.) Defendants also argue that the claim must be dismissed against the City to the extent it is brought directly as "[t]here is no statutory basis for direct liability against a public entity for negligent hiring, training, or supervision." (*Id.* at 21 (citing *de Villers v. Cnty. of S.D.*, 156 Cal. App. 4th 238, 252 (2007)).) Finally, Defendants argue that the claim must be dismissed to the extent Plaintiffs seek to bring it on behalf of themselves as it is a survivor claim. (*Id.*)

Plaintiffs opposition consists of quoting *Hayes v. Cnty. of S.D.*, 57 Cal. 4th 622 (2013), for approximately two pages, followed by four lines of argument and five lines quoting the cause of action:

24-cv-00287-AJB-MSB

> In 2020, AB 392 amended the standards of the duty of law enforcement in using force. The City of San Diego and Sherriff's Department ignored the change in State policy and limits and continued their preference for lethal violence. Decedent was totally disable, specifically including: Negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence; The negligent detention, arrest, and use of force, including deadly force, against Decedent, Imanol Aparicio; The failure to give an appropriate verbal warning prior to shooting; and the failure to properly train and supervise all police employees.

(Doc. No. 38 at 23.)

The eighth cause of action entirely lacks factual allegations and relies exclusively on conclusory statements.[10] Accordingly, the Court **GRANTS** Defendants' motion on this ground and **DISMISSES without prejudice** Plaintiffs' eighth cause of action as to all Defendants.

### 9.    Bane Act

Plaintiffs' final cause of action alleges that "[a]ll [D]efendants" violated the Bane Act when Defendant Officers used deadly force without proper warning, where Decedent did not pose an threat to anyone, had not verbally threatened anyone, and after the initial shots was disabled on the ground, which demonstrated a reckless disregard for Decedent's constitutional rights. (*See* SAC ¶¶ 83–89.)

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022).

///

///

---

[10] The Court notes it also suffers from impermissible group pleading and an overall lack of clarity.

"The specific intent inquiry for a Bane Act claim is focused on two questions: First, '[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Cornell v. City & Cnty. of S.F.*, 17 Cal. App. 5th 766, 803 (2017)). However, "such intent can be proven by evidence of recklessness." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019).

Defendants assert that "Plaintiffs' allegations are conclusory" and that, "[b]ecause Plaintiffs did not properly plead a violation of Decedent's Constitutional rights, there is no Bane Act violation." (Doc. No. 36-1 at 21.) Defendants also argue that the claim should be dismissed specifically as to Chief Nisleit as there are no allegations regarding him. (*Id.* at 19.)

Despite alleging this cause of action against "all defendants," Plaintiffs fail to plead any allegations regarding the actions, inactions, or basis of liability for the City or Chief Nisleit. As such, Plaintiffs fail to state a Bane Act claim against either the City or Chief Nisleit. However, contrary to Defendants' wholesale dismissal, Plaintiffs have alleged a violation of Decedent's Fourth Amendment rights by Defendant Officers and pleaded sufficient facts to support that Defendant Officers acted with reckless disregard. *See, e.g.*, *Bradley v. City of S.D.*, No. 3:24-CV-01216-CAB-JLB, 2025 WL 20437, at *4 (S.D. Cal. Jan. 2, 2025) ("Taking these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court cannot imagine that such conduct by Officer Doe could not plausibly constitute an intentional, coercive act."). Thus, Plaintiffs state a Bane Act claim against Defendant Officers. Accordingly, the Court **GRANTS** Defendants' motion to dismiss the ninth cause of action as to the City and Chief Nisleit and **DENIES** the motion on this ground with respect to Defendant Officers.

///

///

24-cv-00287-AJB-MSB

### 10. Service

Finally, Defendants seek to dismiss all claims against Doe defendants pursuant to Rule 4(m), asserting that the service of process has not yet been effectuated despite the ninety-day deadline well elapsing. (Doc. No. 36-1 at 9.)

Having only cited Rules 12(b)(6) and 8 as the basis of their motion, Defendants fail to provide the appropriate standard for such a request: Rule 12(b)(5). Regardless, pursuant to Rule 4(m)—

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "[A]t minimum, 'good cause' means excusable neglect," requiring "(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001) (quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)). However, even "if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period." *In re Sheehan*, 253 F.3d at 512; *see also Henderson v. United States*, 517 U.S. 654, 658, 116 S. Ct. 1638, 1641, 134 L. Ed. 2d 880 (1996) ("Rule 4(m) . . . permits a district court to enlarge the time for service even if there is no good cause shown."). "In making extension decisions under Rule 4(m) a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (citation omitted).

Plaintiffs argue that good cause for an extension "exists where the Court[']s docket causes a delay in hearing on a motion to dismiss beyond the 90-day period" because "Rule 26(b)(1) stays any discovery until after the Rule 26 Conference." (Doc. No. 38 at 3.)

Under the circumstances of the instant case, Plaintiffs' argument is well taken. Defendants ostensibly hold the information pertaining to the identity of any Doe defendants

and Defendants are under no obligation to proffer such information at this stage. Thus, until Plaintiffs' complaint survives the motion to dismiss stage, Plaintiffs are constrained to a holding pattern respecting the process of the courts while the time ticks past. Defendants fail assert that an extension would prejudice them. Due to the multiple rounds of motions to dismiss, the Court has concerns that dismissal of any Doe defendants at this time, even without prejudice, would have implications for Plaintiffs due to the statute of limitations on their claims. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (applying California's two-year statute of limitations to § 1983 survivor and wrongful death claims).

Accordingly, the Court **DENIES** Defendants' motion to dismiss the Doe defendants for lack of service and **GRANTS** Plaintiffs' request for an extension of time. Plaintiffs must serve any Doe defendants within thirty days of a Scheduling Order being issued by the Court.

## IV.    MOTION TO STRIKE PURSUANT TO RULE 12(f)

Defendants move to strike myriad aspects of the SAC as immaterial, impertinent, or otherwise improper. (Doc. No. 36-1 22–24.)

Federal Rule of Civil Procedure 12(f) permits a court to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, "Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977)). The "'immaterial' [i]s that which has no essential or important relationship to the claim for relief or the defenses being plead." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (citation and internal quotation marks omitted). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Quintara*

24

*Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1089 (9th Cir. 2025) (citation omitted). "Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1004 (S.D. Cal. 2021) (quoting *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015)).

First, Defendants move to strike references to the Fifth Amendment as "inapplicable based on the facts alleged." (Doc. No. 36-1 at 22–23.) In opposition, Plaintiffs assert that "due process of law under the Fifth Amendment is the proper Standard for assessing the Individual Plaintiff's [sic] claims." (Doc. No. 38 at 25.)

Because Plaintiffs allege violations of the Fifth Amendment throughout the SAC, references to the Fifth Amendment are neither immaterial, *see Petrie*, 761 F.3d at 967, nor impertinent, *see Quintara Biosciences*, 512 F.3d at 1174. To the extent Defendants assert Plaintiffs' Fifth Amendment allegations fail to state a claim or fail as a matter of law, a Rule 12(b)(6) motion or Rule 56 motion would be the proper vehicle, not a motion to strike. *See Whittlestone*, 618 F.3d at 974 ("Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading (as [Defendants] would have us do here), we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose."). Accordingly, Defendants' motion to strike references to the Fifth Amendment is **DENIED**.

Similarly, Defendants seek to strike reference to California Penal Code § 835[11] as "immaterial and impertinent" because [t]he violation of a California law which creates protections that go beyond that guaranteed by federal law cannot serve as a basis for a § 1983 claim." (Doc. No. 36-1 at 22–23.) The SAC alleges that Defendants' policy of

---

[11]   "An arrest is made by an actual restraint of the person, or by submission to the custody of an officer. The person arrested may be subjected to such restraint as is reasonable for his arrest and detention." Cal. Pen. Code § 835.

"combat shooting" violates the U.S. Constitution and the California Penal Code, to which Defendants recklessly disregarded. The reference relates to Plaintiffs' claims that Defendants acted with culpable intent. However, here again, the heart of Defendants' argument appears to challenge the merits of Plaintiffs' allegation, for which a motion to strike is the improper vehicle. Defendants' motion to strike reference to California Penal Code § 835 is **DENIED**.

Defendants seek to strike the sole reference to 42 U.S.C. §§ 1985 and 1986 as immaterial because Plaintiffs do not bring any claims under those statutes. (Doc. No. 36-1 at 22–23.) Plaintiffs fail to substantively address this argument. (*See generally* Doc. No. 38.) In contrast to Plaintiffs' references to the Fifth Amendment, the SAC only references 42 U.S.C. §§ 1985 and 1986 once as a basis of jurisdiction despite not alleging any claims pursuant to either statute. (*See* SAC ¶ 1.) The reference to 42 U.S.C. §§ 1985 and 1986 is immaterial. The Court **GRANTS** Defendants' motion to strike reference to 42 U.S.C. §§ 1985 and 1986.

Next, Defendants seek to strike references to "all improperly pleaded damages," including the prayer for punitive damages sought against the City and Chief Nisleit acting in his official capacity. (Doc. No. 36-1 at 22–24.) "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone*, 618 F.3d at 974–75. Accordingly, the Court **DENIES** Defendants' motion to strike Plaintiffs' damages requests.

Finally, Defendants seek to strike certain allegations of negligence as "impertinent and immaterial" that "are not actionable" and "confuse the claim" of negligent failure to train. (Doc. No. 36-1 at 23–24.) The allegations relate to Plaintiffs' alternative theory of negligent failure to train. As such, they are not immaterial or impertinent. Whether that theory is actionable is not the proper question for a motion to strike. Defendants' motion to strike Plaintiffs' allegations of negligence is **DENIED**.

///
///

24-cv-00287-AJB-MSB

## V.    CONCLUSION

Based on the foregoing reasons, Court **GRANTS in part** and **DENIES in part** Defendants' motions to dismiss and to strike. (Doc. No. 36.) The Court **ORDERS** as follows:

1.    The Court **GRANTS** Defendants' request for judicial notice (Doc. No. 36-2)

2.    Defendants' motion to dismiss is **GRANTED** as to:

a.    The first cause of action as to the City and Chief Nisleit;

b.    The second cause of action to the extent that it is pleaded on behalf of Decedent;

c.    The second cause of action as to Chief Nisleit and the City;

d.    The sixth cause of action in its entirety;

e.    The seventh cause of action as to Chief Nisleit only;

f.    The eighth cause of action as to all Defendants; and

g.    The ninth cause of action as to the City and Chief Nisleit.

3.    Defendants' motion to dismiss is **DENIED** in all other respects.

4.    Defendants' motion to strike is **GRANTED** with regard to the reference to 42 U.S.C. §§ 1985 and 1986 (SAC ¶ 1) and **DENIED** with regard to all other requests.

5.    Plaintiffs are **GRANTED** leave to amend for the limited purposes of:

a.    Removing reference to 42 U.S.C. §§ 1985 and 1986 in ¶ 1 of the SAC.

b.    Clarifying ¶ 38 of the SAC by (i) identifying which specific Plaintiff, or both, bring the second cause of action and (ii) removing mention of Decedent;

c.    Amending the eighth cause of action to state a claim and to conform with Rule 8; and

d.    Amending the ninth cause of action as to the City and Chief Nisleit;

6.    Plaintiffs are **GRANTED** an extension of time to serve any Doe defendants until thirty days of a Scheduling Order being issued by the Court.

7.    If Plaintiffs choose to file an amended complaint, it must comply with the limited leave granted herein and be filed **no later than February 13, 2026**. Plaintiffs must

27

24-cv-00287-AJB-MSB

concurrently file a red-lined version of the amended complaint in compliance with Civil Local Rule 15.1.c. If Defendants wish to respond to the amended complaint pursuant to Rule 12, such a motion must be limited to the causes of action which Plaintiffs substantively amended.

**IT IS SO ORDERED.**

Dated:  January 30, 2026

Hon. Anthony J. Battaglia
United States District Judge

28